Union Bank *v.* Middlebrook.

# SUPREME COURT OF ERRORS.

## FAIRFIELD COUNTY, OCTOBER TERM, 1865.

Present,

HINMAN, C. J., DUTTON, BUTLER AND PARK, Js.

## THE UNION BANK *vs.* ELIJAH B. MIDDLEBROOK.

Under the statute, making protests of promissory notes, protested without this state, *prima facie* evidence of the facts therein contained, such a protest in which the magistrate has certified that on the day of the protest a due notice thereof was put into the post office, directed to the indorser at his place of residence, is admissible as evidence that such notice was sent.

Juries have a right to infer what a man intends to do, and what he actually has done, from his conduct, beyond the positive testimony in a case.

Where two brothers were involved by the fraud of their sister's husband, who forged the indorsement of one on a note of the other which he had fraudulently altered after its execution, and a bank which had in good faith discounted the note brought a suit upon the indorsement and obtained a verdict—it appearing that the avails of the note had been laid out in buying goods in the name of one of the brothers, which the other (the defendant) after notice of the frauds, but without informing the bank of them, bought in from him at a low price and sold at a greater,—held, that the jury might infer from these facts a design on the part of the defendant to protect the family from loss and disgrace by paying off the note from the proceeds of the goods, which would amount substantially to a ratification of the indorsement, and that such an inference would not be so unreasonable as to lead the court to set aside the verdict as against the evidence.

Whether, under such circumstances, upon a declaration in special assumpsit on the indorsement, with the common counts, a verdict for the plaintiff might not be sustained on the ground that it places the money derived from the sale of the goods where it rightfully belongs, since the plaintiff furnished the means with which they were originally bought:—*Quære.*

ASSUMPSIT against the defendant as indorser of two promissory notes, with the common counts, tried in the superior

court (*Park, J.,*) on the general issue, with notice that the execution and delivery of the notes, by any of the alleged parties thereto, was denied.

On the trial the plaintiffs produced in support of their claim two notes, one of which was of the following tenor :

$2,700.                              ALBANY, August 13th, 1860.

One month after date I promise to pay to the order of H. C. Ballou, twenty-seven hundred dollars, at the Union Bank, value received.                              C. S. MIDDLEBROOK.

(Indorsed,)     H. C. BALLOU.

E. B. MIDDLEBROOK.

R. BALLOU, JR.

This note was protested for non-payment September 15th, 1860. The other was for $2,500, due and protested December 8th, 1860, and was also indorsed with the name " E. B. Middlebrook."

They also offered a notarial protest, drawn up at Albany, in common form, annexed to each of these notes, in which the notary stated the fact of the protest, and also certified that on the day of protest due notices thereof were deposited in the post-office, addressed to the defendant at his place of residence in this state, and · claimed them as evidence that such notices were in fact sent to the defendant. To their admission for this purpose the defendant objected, but the court admitted them.

The jury having returned a verdict for the plaintiff for the amount of the first named note and interest, the defendant moved for a new trial on the ground that the court erred in admitting this evidence for the purpose for which it was claimed, and also that the verdict was against the evidence in the cause. The motion presented the evidence in full, but all that is material to the decision of the case will· be found in the opinion of the court.

*Sturges* and *Treat*, in support of the motions.

1. The court erred in admitting the notary's certificate to prove the mailing of notice of non-payment to the defendant. The statute, (Rev. of 1866, p. 34, sec. 157,) makes the protest

evidence only of the magistrate's *official* acts, but it is no part of his official duty to give notice, and therefore his certificate is no better than that of any other person. *Burke* v. *McKay*, 2 How., 71 ; 1 Pars. Notes &' Bills, 506, 639. He may give notice as agent of the holder of the note, and so may " any other person who is a party to the note." Chitty on Bills, 294. It is part of the official duty of a sheriff to indorse his doings on a writ which he serves, but in an action by the owner of property attached against the plaintiff in the writ, would a certificate by the officer in his return, that he attached the property " by direction of the plaintiff," be evidence of that fact ?

2. The verdict was against the evidence in the cause. If the defendant, by fraud or otherwise, has injured the plaintiffs or has their property in his hands, there are appropriate remedies for such wrongs, but the only question here is whether on this evidence the defendant is liable as indorser of these notes.

*Beardsley* and *Seeley*, with whom was *Loomis*, contra.

1. The protest was rightly admitted to prove notice. Story on Prom. Notes, § 297, and notes. *Nailer* v. *Bowie*, 3 Maryl., 251 ; *Townsend* v. *Lorrain Bank*, 2 Ohio N. S., 345 ; *Ticonic Bank* v. *Stackpole*, 41 Maine, 321.

2. The verdict is not against the weight of evidence.

3. It is not enough to set it aside that this court would have come to a different conclusion upon the evidence. Manifest injustice and palpable error must appear to justify a new trial. *Bulkley* v. *Waterman*, 13 Conn., 328 ; *Clark* v. *Whitaker*, 19 id., 319 ; *Housatonic R. R. Co.* v. *Knowles*, 30 id., 313.

DUTTON, J. The plaintiff in this case brought an action against the defendant as indorser of two negotiable promissory notes claimed to have been drawn by C. S. Middlebrook, a brother of the defendant, one for 2,500 dollars and the other for 2,700 dollars, payable at the Union Bank, Albany, N. Y.

On the trial to the jury the plaintiff offered in evidence, to

prove that the notes had been duly protested and notice given to the defendant, a notarial protest, in the form substantially in which such documents are usually drawn, stating not only that the note was protested but that notices were sent to the indorsers. The defendant objected to these protests as evidence that notices were sent, but the court admitted them.

We are satisfied that this ruling was correct. By a statute of this state passed in 1823 it was provided that protests of inland bills of exchange and promissory notes, protested without this state, shall be admitted as *prima facie* evidence of the facts contained therein. Revision of 1866, p. 34, sec. 157.

Ever since this statute was passed such protests have, it is believed, been read in evidence without objection to prove that notice was given as well as that a protest was made. The language of the statute implies that the term " protest " was used in the statute as embracing the whole writing which in such cases is usually sent. It speaks of the " facts contained therein," instead of the mere fact of the protest. A strict construction of the statute would in a great measure defeat the design of the legislature. The intention was to save the trouble and expense of sending abroad to obtain depositions as to facts about which there is ordinarily no serious question. But nothing of importance would be gained if the writing commonly called the protest is not *prima facie* evidence of any thing but the mere fact of protest. If the giving of notice must be proved by a deposition, the protest might as well be proved in the same way.

The defendant further claims that the verdict in this case is manifestly against the weight of evidence. The defence is that the indorsements were forgeries, and that the notes also were altered from 500 and 700 dollars, to 2,500 and 2,700 dollars. There is no need of examining this motion except with reference to the 2,700 dollar note. The verdict was evidently rendered on that note alone and almost all the evidence applies only to that note.

It will be unnecessary to examine particularly all the evidence which is detailed in the motion. There are certain

facts which are either admitted by the defendant in his own testimony or are otherwise fully proved, which satisfy us that the verdict ought not to be disturbed.

We are convinced that the defendant has succeeded in showing that the weight of evidence is decidedly in favor of his claim, that the indorsement is not his handwriting. The plaintiff insists, however, that the jury had a right to infer from the evidence that he subsequently ratified it. This was really the main question on which the case turned. The facts from which the jury in all probability found for the plaintiff were substantially the following. The maker of the note was the defendant's brother. He describes himself as being blind, and he was apparently influenced very much by the defendant. As soon as he found himself in trouble he sought his advice and assistance. Ballou, who is charged with having committed the forgery, was at the time the husband of the defendant's sister. C. S. Middlebrook, the brother, gave the notes in question, which it is claimed were altered to enable Ballou to go into business in C. S. Middlebrook's name at Albany. As soon as the protest was received by the defendant and an exposure became inevitable unless something was done, the brother and sister came to Bridgeport to consult with the defendant. He took legal advice. He did not write to the bank, informing it that it held no indorsement of his, as would have been the natural impulse of any man to do who had no other object in view than to avoid trouble from an unfounded claim and to have justice done. He assigns as a reason for not doing it that his sister requested him not to expose her husband. He then made an arrangement with his brother to buy all the goods in Albany of him for 2,000 dollars, which the whole evidence shows were worth several times as much. Then by advice of counsel the brother went into the state of New York and the bill of sale was executed there to make it more sure. Then the defendant sent an agent with his sister to Albany, by whom the goods were brought to Bridgeport and stored in several unusual places. They were soon after sold by the defendant in an unusual way and many of them for less than their value. There can be no serious doubt that

the defendant received in this way more than money enough to pay the 2,700 dollar note, besides the 2,000 dollars which he claims to have paid his brother.

Now the question arises, why did the defendant take this extraordinary course with reference to the protest and to these goods ? By his own showing he was not liable on the note, and had no interest in the property. The inference which the jury drew from these facts may have been this, that Mrs. Ballou came to him in behalf of her husband and herself to save themselves from disgrace and perhaps to save him from prosecution ; and that the defendant then devised a plan to effect this and to save himself harmless, which plan was to get the goods into his own hands for a small consideration, and from the avails of them to pay the note. This would save him from loss, his brother-in-law from danger, and the whole family from disgrace. The jury may have thought that this is the most charitable construction that could be put on his conduct and would amount substantially to a ratification of the indorsement. Juries have a right to infer what a man intends to do, and what he actually has done, from his conduct, beyond the positive testimony in a case. We are not called upon to decide whether we should have come to the same result ; but we think that such an inference is not so unreasonable as to require us to set aside this verdict.

There is another view which may be taken of this question, which would lead us to hesitate about disturbing a state of things which accomplishes substantial justice.

These goods were in reality bought with the money of the plaintiff. Neither of the Middlebrooks ever paid a dollar for them, although they have had the whole avails of a sale of them. The money was obtained of the plaintiff by fraud, and on every principle of justice the goods which were bought with it ought to be regarded as belonging to the bank. These goods have been turned into money, which is in the hands of the defendant. This verdict if allowed to stand will place the money where it justly belongs. It is unnecessary to inquire whether a verdict could have been legally obtained on this ground. The question is whether we are under obligation to

interfere with it. It is at least some satisfaction to be convinced that the refusal of a new trial will not work injustice.

A new trial is not granted.

In this opinion the other judges concurred, except PARK, J., who having tried the case in the court below did not sit.