FRANK H. BUNNELL *vs.* THE BERLIN IRON BRIDGE COM-
PANY ET AL.

Third Judicial District, New Haven, January Term, 1895. ANDREWS, C. J.,
TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

Where the standard of duty imposed by law upon one charged with negli-
gence, is merely to take such precautions as a reasonable man of ordi-
nary prudence would take, under the circumstances as they exist in
the particular case, both the measure of the duty and the extent of its
performance are to be determined by the trier as matter of fact, and
not by the court as matter of law.

The defendant was engaged in lifting a heavy roof-truss with a derrick,
when a rope broke and the truss fell; while his workmen were raising
the truss into position to be again lifted, the gin-poles of the derrick
parted, by reason of the loosening of a guy-rope, and one of them fell,
injuring the plaintiff. The trial court found that it was the duty of
the defendant to examine the condition of the apparatus after the acci-
dent, and see that it was in good condition, and that he was guilty of
negligence in failing so to do. *Held* that this was a finding upon ques-
tions of fact, and not reviewable by this court.

The complaint alleged that while the defendant was hoisting trusses, be-
cause of the defective character of the material and careless and negli-
gent manner in which the servants of the defendant performed said
work, the hoisting apparatus broke while one of such trusses was being
hoisted, and one of the derricks fell. *Held* that these allegations were
broad enough to cover the transaction as described above.

A specification of the particular acts done by the defendant's workmen in
performing the work described, is matter of form and not of substance,
and any defect in this respect is cured by a judgment on default.

The fact that the plaintiff, when injured, was on a highway little used,
and at the time largely occupied by building material, does not, as
matter of law, render him guilty of contributory negligence, and cast
upon him the risk of an accident. Whether he was guilty of such neg-
ligence, under all the circumstances, is a question of fact.

Under the provisions of the Practice Act for including in one action parties
defendant having separate and even antagonistic interests, and author-
izing the court to protect their differing interests, a separate judgment
against one of several defendants may be a "final judgment" from
which an appeal to this court may be taken, before final judgment is
rendered as to other parties to the action.

[Argued January 17th—decided February 8th, 1895.]

ACTION to recover damages for personal injuries sustained
through the alleged negligence of the defendants; brought

to the Superior Court in New Haven County and heard (as to the defendant Taylor) in damages to the court, *George W. Wheeler, J.;* facts found and judgment rendered for the plaintiff to recover $550 damages, and appeal by the defendant Taylor for alleged errors in the ruling of the court. *No error.*

No trial or hearing was had as to the other defendant, the Berlin Iron Bridge Co.

This action was originally brought against The Berlin Iron Bridge Company. The complaint alleged that on October 25th, 1893, the defendant was engaged in hoisting sundry iron girders and trusses, and placing the same on a building on the west side of Ferry street in the city of New Haven, using for said purpose sundry derricks, blocks, falls and other hoisting apparatus; that the plaintiff was then in said Ferry street, being a public highway ; that by reason of the defective character of said apparatus, which fact was well known to the defendant, and because of the careless and negligent manner in which the servants of said defendant performed said work, said hoisting apparatus broke while one of said girders or trusses was being hoisted by the defendant's servants, and one of the derricks fell against said building, thereby causing a large body of iron, which had been carelessly placed on said building by said defendant, to fall into the highway where the plaintiff was, which said body of iron struck and knocked down the plaintiff, causing serious injuries to him.

The answer of the Berlin Iron Bridge Co. set up three defenses : first, a denial of the alleged negligence and injuries ; second, that the company was not engaged in the work alleged, but the same was being done by one W. A. Taylor, to whom the defendant had let said work as an independent sub-contractor, and that the plaintiff's injuries, if any, were not caused by the defendant, but by said Taylor ; third, that the plaintiff's injuries were caused by his own carelessness.

On motion of the plaintiff, W. A. Taylor was cited in as a co-defendant. Taylor appeared, suffered a default, and moved for a hearing in damages. Upon this hearing the

Superior Court assessed the damage at $550, and rendered judgment that the plaintiff recover the same of Taylor. Taylor appealed from that judgment. The court made the following finding of facts:—

" Upon the hearing in damages on default of W. A. Taylor to the court upon the issues as on file, the following facts are found by the court and made a part of the record.

" On October 25, 1893, and for some time previous thereto, the defendant Taylor was engaged in erecting the iron framework and roof-trusses used in the building at the southwest corner of River and Ferry streets in New Haven, known as the power house of the State Street Horse Railroad Company of New Haven. The building was 250 feet in length by 80 feet in width. The north end of the building was on River street and the east side on Ferry street, and five feet distant from the west line thereof.

" The building was divided into four parts by brick walls running transversely. The northern part, or that nearest River street, was to be used for the storage of cars, and was called the car-house, and was about 90 feet in length. The remaining portion was to be occupied for the repair shop, and the engine and boiler rooms, respectively.

" The side of the car-house towards the east is made of iron framework supported by four iron columns anchored by means of bolts into large granite blocks firmly set in the ground. These were in position on the 25th day of October, 1893.

" The columns were about 30 feet high, and were connected at the top by cross-pieces running horizontally and bolted at the top of each of the four columns. This was a part of the ironwork Taylor was at said time engaged in putting in position. On said day Taylor's employees were engaged in hoisting an iron truss weighing about six tons, Taylor not being present. The east end of the truss was to rest on the northernmost of these iron columns, and the west end of the truss on a brick wall, which was the west wall of the car-house. The truss was being raised at a point about 20 feet from the north end of the car-house. The apparatus used

for raising the truss consisted of two gin-poles, $8 \times 12$ inches thick and 56 feet in length, each held in position by the guy ropes nearly at right angles to each other, and a center guy rope running from the top of the west gin-pole to the top of the east gin-pole and then through a pulley block down the east gin-pole, nearly to the ground, and was there made fast by turns around a cleat 24 inches in length and $4 \times 4$ inches thick, spiked to the east gin-pole near its foot. There was, after being wound around the cleat, 15 or 20 feet of this rope lying on the ground near the bottom of the gin-pole. At the top of each gin-pole was a set of falls, consisting of a double pulley block at the top and bottom, and four lines of rope running between the blocks.

"The end of the rope in each set of falls was attached to a windlass which was turned by the said employees. The bottom pulley block on each set of falls was chained to the truss. Said gin-poles were located inside of said building, and all the work was being done therein.

"The arrangement of the gin-poles, the position of the truss, iron columns and the building including the trusses and ironwork are accurately shown upon the map and designs laid in and marked as exhibits. The arrangement of the apparatus used in hoisting the truss is substantially shown by models used on the trial. All of these exhibits and models are made a part of the record, and may be used on the argument of the appeal without being printed in the record.

"On the afternoon of said day the truss rested upon the ground a few feet north of said gin-poles, the said falls were attached to the truss a few feet from the west and east ends thereof; some of the employees began turning the windlass, and so winding up the rope passing through said pulleys, others steadied the truss and kept it away from the gin-poles; as it was being raised in this way the truss was raised to within a few inches of its bed, the west end to set on the wall, the east end on the northernmost iron column.

"The east end of the truss was raised a little higher than the west end, and in bringing up the west end the line in the west set of falls parted and the truss fell, causing the

east lines to part, and the whole truss to fall to the ground, landing several feet from the bottom of the gin-poles, and leaning over against the two gin-poles, with its great weight, and supported only by the gin-poles, the peak of the truss being about midway between the two poles. This happened about five o'clock in the afternoon. The falling of the truss against the gin-poles caused a considerable pressure to be placed on the entire hoisting apparatus. The workmen of Taylor immediately began to shove the truss to an upright position, and braced it up so that its weight was in a short time removed from the gin-poles. The work of shoving up the truss into an upright position to be again raised took about half an hour, and this work was necessary to and a part of the work of raising this truss, and necessary to and a part of the work of raising any truss. The work of shoving up the truss had been nearly completed, the order had been given the men to collect the tools and apparatus used in raising the truss, and they had begun to collect the same; one of the men was just descending from the peak of the truss when he saw the center guy rope line playing through the pulley; he endeavored to hold it but could not; he called for help but received none, and he jumped from the truss and ran to a place of safety. As soon as the center guy rope loosened the gin-poles parted, and the east gin-pole fell upon the horizontal cross-pieces of iron at the top of the four columns which formed the east side of the car-house, carrying to the ground said columns and the entire side.

"After the falling of the truss as aforesaid none of Taylor's men examined the apparatus to see if any injury had resulted to it. The center guy rope had been properly wound around the cleat at the foot of the east gin-pole when the poles had been erected. The truss had fallen with its great weight against this east gin-pole and this center rope. No examination was thereafter made by Taylor's men to see if the outer rope were still secure. The foreman and his men knew that if the center guy rope became loosened the gin-poles must fall. Ordinary inspection would have detected any loosening of the guy rope and defect in its attach-

ment to the cleat, and ordinary and due diligence on the part of Taylor's employees required such examination. The guy rope could have become loosened in only two ways: by being loosened by some person, or by the weight and strain of the truss falling against the gin-pole, or by both. The employees of Taylor were engaged just before the guy rope loosened from the cleat, in picking up the ropes and tools at and about the foot of the gin-poles. No other persons were present at or about this time in the immediate vicinity of the gin-poles.

" No direct evidence was offered of the cause of the loosening of the guy rope. The only opinion offered by any of the witnesses was that of one of the witnesses and workmen of Taylor, that one of the men engaged in gathering up the ropes, tools and apparatus, inadvertently loosened the center guy rope from the cleat by getting hold of the said 15 or 20 feet of rope stretched on the ground at the foot of the gin-pole. I find from the foregoing facts and the evidence produced on the trial that the guy rope parted because first loosened by the falling of the truss as aforesaid, and next by the act of some workman of Taylor in inadvertently pulling the rope loose from the cleat by getting hold of the said 15 or 20 feet of rope. I find the parting of the guy rope to have resulted from the negligence of the defendant's workmen in not having made an examination of the apparatus after the falling of the truss, and in carelessly loosening the guy rope from the cleat, and so causing the gin-poles to part.

" On the afternoon in question Bunnell, the plaintiff, left his place of employment on River street between Lloyd street and Blatchley avenue, where he was employed as a pipe bender, at about five o'clock. He was on his way home, and had he gone directly home he would not have passed the point on Ferry street where he received the injuries hereinafter described. When he was near the corner of River and Ferry streets, he saw a number of people standing there, and heard there had been an accident in raising the truss for the said car-house. He went down Ferry street, passed around the east end of the spectators, and took his position in Ferry

street nearer the building than any of the other spectators, but farther from the gin-poles than any spectator, in order to get a better view of the work being done in the car-house. The truss had fallen before Bunnell reached this spot, and the workmen were engaged in shoring up the truss as aforesaid, intending to get it in position for raising, and so leave it over night. Bunnell did not anticipate or have any reason to anticipate any danger to himself from the falling of the gin-poles. When he arrived the weight of the truss had been removed from the gin-poles, and while he was there no work was done upon any of the apparatus or upon the gin-poles. No person in the exercise of ordinary diligence viewing this work from Ferry street could have anticipated the parting of the gin-poles.

" During none of the time, viz, about 10 minutes, Bunnell was in this place, was he or any of the spectators present warned of the danger of their position, or of the possibility of any danger in the work being done.

" Ferry street in front of the building in process of erection was a public highway, but had been used but little as a highway for a number of years, and at this time was quite largely appropriated by having deposited upon it the building material used in the erection and construction of said building by the State Street Horse Railroad Company, who owned and controlled the building in process of erection. Bunnell stood near a pile of lumber at the south end of the car-house, the spectators were north of him, the lumber east of him, and when the gin-poles parted he ran to the south, and had only gone a few feet when he was struck by the iron framework, and thrown to the ground. One of the iron columns fell on a pile of brick four or five feet high, so that the weight of the iron did not rest on his body. Bunnell was pulled out from under the framework and assisted to a neighboring coal office, and thence carried to his home.

" All of the appliances used in said work by Taylor were adapted to the work and reasonably safe and proper, and, except the two broken lines aforesaid, were in good condi-

tion after the gin-poles parted, and the men employed in the work were skillful and competent in it.

"I find that Bunnell was in the exercise of due care at the time of the injury to him.

"In consequence of the falling upon him of said iron framework, Bunnell received severe injuries, causing paralysis of the bladder, from which he has not recovered and will not for some time, and resulting in much pain and inconvenience, and was kept from his work for 11 weeks, and expended for medical attendance and care $     and lost in earnings $     .

"The plaintiff claimed that the defendant's negligence caused the said injuries, to which he in no wise contributed.

"The defendant claimed that the injuries to the plaintiff did not result from his negligence, and that the negligence of the plaintiff contributed to said injuries.

"The defendant further claimed : 1. That the said accident resulting from the falling of the gin-pole, as proved, was not set up in the complaint, and therefore the plaintiff could recover only nominal damages. 2. That since the apparatus was proper and the employees of Taylor competent, negligence could not be presumed from the mere falling of the gin-poles. 3. That because of the condition of Ferry street, its non-use as a highway, and its occupation by the Street Railway Company with building material, the plaintiff in going upon this part of Ferry street assumed the risk of accident, and could recover only nominal damages. 4. That as the plaintiff already knew of the accident to the truss, and therefore voluntarily took up an exposed position for the purpose of observing the workmen as they were endeavoring to repair the accident, he assumed the risk of the position, and was guilty of contributory negligence, and therefore could only recover nominal damages. 5. The defendant claimed that the falling of the truss did not cause the accident, and that none of the acts of negligence claimed by the plaintiff caused the injuries.

"The court overruled the claims of the defendant Taylor, and rendered judgment for the plaintiff that he recover

against the defendant the sum of $550 damages, and his costs."

The reasons of appeal set forth in detail the defendant's claim that the court erred in overruling the claims of the defendant recited in the above finding.

*Charles J. Cole* and *Seymour C. Loomis*, for the appellant (defendant).

*Samuel A. York* and *Isaac Wolfe*, for the appellee (plaintiff).

HAMERSLEY, J. The only reasons of appeal assigned in this case, are the alleged errors of the court in overruling the claims set forth in the finding as made by the defendant upon the facts found.

The main grievance of the defendant is the action of the court in overruling his general claim, that upon the facts found " the injuries to the plaintiff did not result from his negligence, and that the negligence of the plaintiff contributed to said injuries."

The defendant was engaged in erecting the iron framework and roof trusses (weighing six tons each) used in a building at the corner of two highways, River street and Ferry street. The apparatus used for raising the trusses consisted of two gin-poles or derricks, $8 \times 12$ inches thick and 56 feet in length, with their appropriate appliances. A truss, which had been raised some twenty feet or more, fell to the ground; the gin-poles parted, the one standing next to Ferry street fell towards the highway, carrying with it the iron framework of the side of the building facing Ferry street; the defendant being in the highway was struck by the framework and injured.

The court below found that the falling of the gin-pole and iron framework, was caused by the negligence of the defendant's servants; and that the plaintiff was in the exercise of due care and contributed in nowise to his injuries.

This finding of negligence is a conclusion of fact from the

Bunnell v. Berlin Iron Bridge Co. et al.

evidential facts found, as well as from all the evidence. The question of negligence shown by the record to have been presented to the court below, clearly depends upon the conduct of the parties under the special circumstances of the case. Did the parties act as men of ordinary prudence would act under like circumstances? "In cases involving the question of negligence, where the general rule of conduct is alone applicable, where the facts found are of such a nature that the trier must, as it were, put himself in the place of the parties, and must exercise a sound discretion based upon his experience, not only upon the question what did the parties do or omit under the circumstances, but upon the further question, what would a prudent, reasonable man have done under those circumstances, and especially where the facts and circumstances are of such a nature that honest, fair-minded, capable men might come to different conclusions upon the latter question, the inference or conclusion of negligence is one to be drawn by the trier, and not by the court as matter of law." *Farrell* v. *Waterbury Horse R. Co.*, 60 Conn., 257.

The defendant, however, claims that the trial judge, in reaching his conclusion, required of the defendant something which the law does not require of him. The judge finds that the defendant was guilty of negligence in not making an examination of the apparatus after the falling of the truss and before the falling of the gin-pole ; the defendant claims it was not his duty to make such examination, and therefore his failure to do so cannot support negligence.

The only duty involved is the duty to take such precautions in the special emergencies of this case as a man of ordinary prudence should take. The standard of such duty is not the same under all circumstances, so that it can be applied as a matter of law by the court to the facts found. There is no statute or rule of law defining the duty of a builder under the circumstances found by the court. The duty imposed upon the defendant is one whose measure must vary according to the circumstances presented in each case. "The standard then is that of a reasonable man ; what would a

reasonable man of ordinary prudence have done under the circumstances as they existed in this case? In these instances both the measure of duty and the extent of performance must be ascertained as facts." *O'Neil* v. *Town of South Windsor*, 63 Conn., 154.

The case under discussion involves the duty of the defendant to take a precaution the necessity of which depends on conditions peculiar to an exceptional emergency, in its nature insusceptible of reproduction, *i. e.* on the precise circumstances existing in this case, and is therefore clearly distinguishable from cases where the precaution which the defendant fails to take is one required at all times by circumstances not peculiar to a single transaction, but continuing or constantly recurring in the same form; the question how far the duty of taking the precaution called for in such cases may be a conclusion of law is not now involved.

The principle as stated in the cases above cited, is supported by many decisions of this court, and must control the present case. The conclusion of negligence on the part of the defendant, and of contributory negligence on the part of the plaintiff, was one to be drawn by the trier as a matter of fact, and not by the court as a matter of law.

The other claims made by the defendant and overruled by the court, as set forth in the finding, purport to raise questions of law, but they are largely repetitions in detail of the general claim, and are substantially disposed of by the finding of facts.

The first claim is that the "accident resulting from the fall of the gin-pole, as proved, was not set up in the complaint, and therefore the plaintiff could recover only nominal damages." It seems to us very clear that the allegations of the complaint are broad enough to cover the transaction as proved. In brief, it alleges that the defendant was engaged in hoisting sundry iron trusses and placing them on the building, using for that purpose sundry derricks and other hoisting apparatus; that by reason of the careless and negligent manner in which the servants of the defendant performed that work, the apparatus broke while one of said

trusses was being hoisted, and one of said derricks fell against said building, thereby causing a large body of iron to fall into the highway where the plaintiff was, so as to strike and injure the plaintiff. The proof is within these allegations. The work of caring for the apparatus when endangered by the fall of a truss to the ground, was as much a part of the work of hoisting sundry iron trusses as the work of caring for the apparatus when strained by the weight of a truss hanging in the air; the negligence of the defendant consisted in the negligent manner in which his servants performed that work. The charge of negligence in the complaint covers the conduct of the defendant's servants in the use of their appliances during the whole transaction from the first lifting of the truss mentioned, to the falling of the gin-pole and framework which caused the injury to the plaintiff.

Nor is there any ground for the defendant's claim made in argument, that because the particular acts of the defendant's workmen which constituted the " careless and negligent manner" in which they performed the work mentioned, were not specified in the complaint, the allegation of negligence must be held to be merely an allegation of a conclusion of law. Such particularity is not ordinarily necessary—especially when the want of particularity is not objected to by appropriate pleading—and is rarely employed. The complaint substantially alleges that the defendant so carelessly and negligently managed the apparatus described in the performance of the work described, that the derrick fell against the iron framework, causing that to fall and injure the plaintiff. This is in substance the sufficient and well established form for all such cases. Any want of clearness that may be claimed in its statement is a defect of form, and not of substance, and is cured by the judgment on default.

The second claim, " that since the apparatus was proper and the employees of Taylor competent, negligence could not be presumed from the mere falling of the gin-poles," states a proposition of law not applicable to the facts as found. The court did not presume negligence from the mere falling of the gin-pole; and the judge in overruling in general the

claims of the defendant, containing this proposition which he had no occasion to apply, did not rule as a matter of law that negligence could be so presumed. The finding of negligence is based on facts proved by the evidence from which the court inferred actual negligence on the part of the defendant's servants. The defendant criticises the process of reasoning used in the opinion of the court, and especially the inference of the judge by which he finds facts proved as to which no direct evidence was offered; but there was direct evidence from which such inference might be drawn. It is the right, and sometimes the duty, of the trier to infer what a man has actually done, from his conduct, beyond the positive testimony in a case. *Union Bank* v. *Middlebrook*, 33 *Conn.*, 100; *Dubuque* v. *Coman*, 64 Conn., 479. Such inference is one of fact, and cannot present a question of law; at least where, as in this case, the inference is one which cannot be said to be palpably wrong.

The third and fourth claims relate to the question of contributory negligence, and are fully disposed of by the finding of the court that the plaintiff in fact was in the exercise of due care at the time of the injury to him; except the claim of law that because Ferry street was a highway little used, and at the time of the accident largely occupied by building material to be used in the construction of the adjoining building, the defendant in going upon the street assumed the risk of the accident; and this claim is not well founded. Every one has a right to use a public highway, however little it may be used by others. The defendant had a right to be in Ferry street either for the purpose of traveling or of satisfying his curiosity. But it is true that being there lawfully he might so act, in view of the condition of the street and all the circumstances, as to contribute to his injury by his own actual want of ordinary care. Whether he did so contribute or not is a question of fact, settled both by the general and particular findings of the court.

The fifth claim, that the falling of the truss did not cause the accident, and that none of the acts of negligence claimed

by the plaintiff caused the injuries, is disposed of by the finding and the discussion of the other claims.

This action, so far as the original defendant is concerned, is undisposed of by the judgment against Taylor, and is still pending in the Superior Court. The question was mooted during argument whether the separate judgment against Taylor, under such circumstances, is a "final judgment" from which an appeal can be taken. In *Finch* v. *Ives*, 24 Conn., 387, and 28 id., 112, it was held that a judgment for costs upon a motion in error is such "final judgment," although not disposing of the merits of the cause, and the action is entered on the court docket for further proceedings. That case seems to establish the principle that a "final judgment," within the meaning of our statute of appeal, may include any judgment in its nature final and separable from any other judgment that may be rendered in the action, although not finally disposing of the action. Independently however of such authority, we think the provisions of the Practice Act for including in one action parties defendant having separate and even antagonistic interests, and for authorizing the court by orders for separate trials and otherwise to protect their differing interests, clearly implies the possibility of a "final judgment" as to one party, although the action continues in court for the disposition of the rights of other parties. There can be no question, therefore, of our jurisdiction of such an appeal as this; whether any defects exist in the manner of taking the appeal is a question not before us; if such defects exist they must be considered as waived by the parties. The operation of these separate judgments in one action may raise questions of difficulty, and we call attention to the matter in order that this case may not be deemed an authority on such questions beyond the one question considered, viz : a separate judgment against one of several defendants may be a "final judgment" from which an appeal may be taken in the proper manner, before final judgment is rendered as to all parties to the action.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.