ELIZABETH PATRICK, In Equity,

*vs.*

J. B. HAM COMPANY, and ROYAL INDEMNITY COMPANY.

Androscoggin.    Opinion January 19, 1921.

*Workmen's Compensation Act.    The finding by the chairman of the Industrial
Accident Commission, that the injury complained of was caused by accident aris-
ing out of and in the course of the employment of the injured party, if founded
on facts proved and supported by rational and natural inferences from
facts proved or admitted, is final.    Injury caused by exertion incident
to one's employment, under the ordinary and usual circumstances
and conditions of such employment, which accelerates or aggra-
vates a pre-existing disease and results in injury, is an accident
arising out of and in the course of such employment within
the meaning of the Act.    It is contended in the dissenting
opinion, that a fatal malady, progressive in its nature
and character, and destined at some time, to result in
injury without any external, foreign, or adventi-
tious influences, precludes, as accidental with-
in the meaning of the Act, an injury result-
ing from a condition produced by such
pre-existing disease, even though such
injury happens to occur at a time
when the injured party is engaged
in his usual employment under
ordinary conditions and cir-
cumstances, nothing unex-
pected or unforeseen,
except the injury
itself, occurring.*

This is an appeal by J. B. Ham Company, an employer, and Royal Indemnity
Company, its insurance carrier, from a decision of the chairman of the Indus-
trial Accident Commission ordering them to pay to Elizabeth Patrick, depend-
ent widow of Joseph Patrick, a deceased employee of said J. B. Ham Com-
pany, weekly compensation of $11.80 to the maximum of $3,500 provided
for by the Workmen's Compensation Act.

*Held*:

1.   That the burden of proof was amply sustained within the rule laid down
in Mailman's Case, 118 Maine, 172, is clearly shown in the record.   And Mail-

man's Case is decisive of this case, and is authority for a change of burden of proof or proceeding had the same been required. There, as here, there was dispute as to the circumstances, and much was left for the Commission to settle from inferences to be drawn from the facts proved or admitted.

2.  The chairman found from facts proved and inferences from facts proved, that the decedent's death was due to personal injury by accident arising out of and in the course of his employment.

3.  It is the settled law that even where a workman dies from pre-existing disease, if the disease is aggravated or accelerated under certain circumstances which can be said to be accidental, his death results from injury by accident. Acceleration or aggravation of a pre-existing disease is an injury caused by accident.

4.  That Patrick was suffering from diseased arteries pre-disposing him to cerebral hemorrhage is of no consequence in the case. That he might have died, or would have died, in his bed of cerebral hemorrhage, in a year or a week is immaterial.

The question before the Commission was whether the work that he was doing on the afternoon of October 13th, 1919, caused the cerebral hemorrhage to then occur. If so we think it was an accident arising out of and in the course of his employment.

This was a question of fact. The Industrial Accident Commission through its chairman has decided this question of fact in favor of the claimant. The finding is, we believe, supported by rational and natural inferences from proved facts, and we do not feel authorized to disturb the finding.

On appeal by defendant. This case came to the Law Court on appeal by J. B. Ham Company, the employer, and Royal Indemnity Company, its insurance carrier, from the decree of a single Justice sustaining the findings of the chairman of the Industrial Accident Commission, ordering them to pay to Elizabeth Patrick, dependent widow of Joseph Patrick, a deceased employee of said J. B. Ham Company, weekly compensation of $11.80 to the maximum sum of $3,500, under the provisions of the Workmen's Compensation Act. The questions involved embrace the question as to whether the finding of the chairman of the Industrial Commission is founded on facts proved and natural inferences from facts proved or admitted, and thus final, and the question as to whether the injury complained of was the result of an accident within the meaning of the Act. Appeal dismissed. Decree affirmed.

The case is fully stated in the opinion.

*McGillicuddy & Morey,* for plaintiff.

*Leon V. Walker,* for defendants.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, DUNN, MORRILL, DEASY, JJ.

PHILBROOK, J., dissenting. CORNISH, C. J., SPEAR, J. Concur in dissenting opinion.

HANSON, J. This is an appeal by J. B. Ham Company, an employer, and Royal Indemnity Company, its insurance carrier, from a decision of the chairman of the Industrial Accident Commission ordering them to pay to Elizabeth Patrick, dependent widow of Joseph Patrick, a deceased employee of said J. B. Ham Company, weekly compensation of $11.80 to the maximum sum of $3,500 provided for by the Workmen's Compensation Act.

The facts found by the Industrial Commission were as follows:

On October 13, 1919, Joseph Patrick was an employee of the J. B. Ham Company, grain dealers of Lewiston, Maine. The J. B. Ham Company were assenting employers under the terms of the Workmen's Compensation Act.

On the date of the alleged injury Mr. Patrick was engaged in loading a car of grain at the place of business of the J. B. Ham Company. The grain was in bags containing 100 lbs. each and consisted of corn and mixed grain. The grain was being wheeled into a car on small trucks, two bags at a time. Mr. Patrick had charge of loading the car, and remained in the car. Other employees were trucking the bags into the car. As the bags were trucked into the car they would be wheeled to the front of the pile in such a manner as to place the bags to be unloaded from the truck parallel with those already placed in the car, the man who had wheeled the bags in would set the truck down and take one end of the bag while Mr. Patrick standing at the front end of the truck would take the other end of the bag, and the two would swing the bag onto the pile. As the bags were piled up the height would vary according to the number placed in the car.

Mr. Patrick was engaged in this kind of work all the morning of October 13th. He went home to his dinner as usual at noon and returned as usual at one o'clock ready to continue his work. As the work commenced in the afternoon, a Mr. Bailey, who was one of those wheeling the grain into the car, asked Mr. Patrick if he was ready for some corn and Mr. Patrick said "Bring it in." Mr.

Bailey brought in a load of two bags and together with the help of Mr. Patrick started to place the bags on the pile, one at a time, in the usual way. Mr. Bailey testified that the pile, at that time, was about three feet high where the bags were to be placed.

Mr. Patrick stooped to pick up his end of the bag and as he threw it onto the pile Mr. Bailey said he noticed Mr. Patrick lurched a little. However, they put the bag in place and both stooped and picked up the second bag and placed it on the pile. Again Mr. Bailey says he noticed that Mr. Patrick lurched a little as he swung the bag up.

Mr. Bailey then went after another load of grain and returned with it. Again Mr. Patrick stooped to pick up his end of a bag but this time he fell across the bag and could not lift it. Mr. Bailey then saw there was something wrong with Mr. Patrick and he called some other men who, together with Mr. Bailey, assisted Mr. Patrick to walk out of the car into the store-room. Mr. Patrick soon became unconscious, he was sent at once to a hospital where he died about ten o'clock that night without regaining consciousness. The cause of the death, as testified by two physicians, was cerebral hemorrhage.

No question is raised as to dependency, and the chairman found that Elizabeth Patrick was a dependent as defined by sub-division (a) Paragraph VIII, Section 1 of the Workmen's Compensation Act, upon Joseph Patrick at the date of his death. And basing his decision upon the foregoing facts, and upon the testimony of the two physicians testifying in the case, the chairman further found that "in view of these two opinions, expressed by the two physicians who saw and attended Mr. Patrick, and the further evidence that Mr. Patrick had resumed his work for the afternoon in apparently his usual health and was actually engaged in that work at the time the fatal hemorrhage first appeared, and in view of the entire lack of evidence of any other possible cause of the hemorrhage, the chairman finds that Mr. Patrick's death was due to a personal injury by accident arising out of and in the course of his employment."

The decree followed, and it is the opinion of the court that there was evidence upon which the decision of the Commission can rest.

Counsel for appellant contends that the chairman not only misapprehended the evidence on various vital points, but that he in effect placed the burden of proof not upon the claimant, but upon the respondents.

As to the first contention, the appellant's counsel strenuously urges that the testimony of Mr. Bailey is inconsistent with an affidavit previously made, which affidavit was written by.counsel himself, and after cross-examining Mr. Bailey in detail as to his statements, introduced the affidavit.

The chief contention was over the circumstances attending the piling of the first and second bags. There is variation between the affidavit and the testimony before the Commission, as there always is when months intervene, but the variation is not such as to discredit the testimony of Mr. Bailey, and it can be reconciled easily with the petitioner's theory when the whole record is taken into consideration. It may be said that appellant does not challenge the integrity of the witness, nor do we find that his close cross-examination destroys the value of his testimony because of its inconsistency. Counsel's theory is that Patrick was stricken before he lifted at all, on either of the bags, and he claims that Bailey's testimony supports his theory, but it is found that after confronting him with his former statement as to Patrick's position on the arrival of the first two bags, Bailey does not support his claim. The record has it:—

"Q. Now Mr. Bailey don't you recall that at that time you stated that 'when he stooped for the first bag, I noticed him lurch forward against the bag before he lifted it?'

A. I do, yes, sir.

Q. And then that you said,—'That is strange, he was a strong man and usually threw a bag of grain easily enough.'

A. I did.

Q. You made that statement?

A. I made that statement. He lurched every time against the bag when he lifted it, but he lifted the two bags."

It is evident that the predisposing cause of Patrick's death operated in a very few .minutes, and possibly within less time than a minute. The mere act of piling two bags would not consume a minute. It is argued that at one o'clock Mr. Robitaille, who was employed in the car pulling nails from the inside of the car, tried to talk with Patrick, who was then "looking at his tally slip which was nailed to the side of the car," and receiving no response to his remarks, ceased speaking, and continued his work. It is argued from this occurrence that Patrick was then affected by the attack of cerebral hemorrhage which caused his death. But it appears that George M.

Bailey, another employee, and the witness whose testimony reveals all the important facts and circumstances in the case, entered the car at five minutes after one o'clock and asked Mr. Patrick if he could take some corn in the south end of the car, and Patrick said "Yes, bring it in." A man stricken with cerebral hemorrhage would not be likely to answer so promptly. Immediately after this, Mr. Bailey brought in the first truck load of two bags and proceeded to unload the same with Patrick's help. In the act of jointly lifting and piling the two bags the cause of Mr. Patrick's death occurred, whether from accident arising out of and in the course of his employment, or from natural causes. It necessarily happened then. This is made certain by the testimony that Bailey returning for another load, said to another workman, "Joe has had a shock," and on returning Bailey found Patrick standing "where he had left him," and "Patrick reached down to take hold and lurched over again, smiled, and drool was running out of his mouth." He did not lift on the second truck load, but turned and tried to "hold himself to the side of the car." That Mr. Patrick was stricken while in the course of his employment is not disputed. That he was a man of middle age, of good habits and regular life, and in the same employment for many years, appears in the record.

Upon the second contention counsel urges that "the decision of the Commission throws the burden of proof upon the respondents instead of upon claimant." In his decision the chairman says: "The only question raised in this case therefore is whether the final cause of the cerebral hemorrhage was a natural one or an act of Mr. Patrick while in the course of his employment.

No evidence was produced at the hearing of any cause to which the hemorrhage could possibly be attributed, except the employment in which Mr. Patrick was engaged."

And again he says: "In view of the entire lack of evidence of any other possible cause of the hemorrhage, the Chairman finds that Mr. Patrick's death was due to a personal injury by accident arising out of . . . . the employment."

As to this contention, we do not perceive that the record supports the same, or that the language used by the chairman can be held to have any such import as claimed by appellant. When read in connection with the finding as a whole, the suggestion of any such position on the part of the chairman disappears. The statement of the

negative position was surplusage, and no doubt could have been omitted, but its inclusion cannot invalidate the positive fact found, which is the important inquiry here.

That the burden of proof was amply sustained within the rule laid down in Mailman's Case, 118 Maine, 172, is clearly shown in the record. And Mailman's Case, supra, is decisive of this case, and is authority for such change of burden of proof or proceeding had the same been required. There, as here, there was dispute as to the circumstances, and much was left for the Commission to settle from inferences to be drawn from the facts proved or admitted. There the court held, that "The decree of the Commission is analogous to a finding of a Judge who by consent determines facts or an award by a referee agreed upon by the parties. That such a finding or award cannot be impeached by showing errors of judgment, however gross, as to the weight and credibility of testimony, is settled by so many authorities that citation is unnecessary." And "In a case proved wholly, or in part, circumstantially, when there is dispute as to what the circumstances are, the determination of such dispute by the Commission is final. It is for the trier of facts, who sees and hears witnesses, to weigh their testimony and without appeal to determine their trustworthiness." "And finally, when the evidence is circumstantial and a state of facts is shown more consistent with the Commissioner's finding than with any other theory, and the finding is supported by rational and natural inferences from facts proved or admitted, an appeal cannot be sustained."

The chairman found from facts proved and inferences from facts proved, that the decedent's death was due to personal injury by accident arising out of and in the course of his employment.

In *Saunders* v. *New England Collapsible Tube Co.*, et al, Supreme Court of Errors of Connecticut, June 10, 1920, 110 Atl., 538, a similar question was presented, and the court say:—

"It is the duty of the trier to infer what one has done or left undone, although there be no positive testimony of this. And when the appellate court passes upon whether this duty has been judicially performed by legal standard it cannot inquire whether it would have reached the same result; it must limit its inquiry to the ascertainment of whether the inference is so unreasonable as to be unjustifiable. It is the right of every trier to infer what one's conduct has been in the circumstances, even though the infer-

ence reaches beyond the positive testimony in the case. *Bunnell* v. *Berlin Iron Bridge Co.*, 66 Conn., 24, 36, 33 Atl., 533; *Union Bank* v. *Middlebrook*, 33 Conn., 95, 100; *Dubuque* v. *Coman*, 64 Conn., 475, 479, 30 Atl., 777." And the opinion adds: "It was the province of the commissioner to determine which theory was supported by the evidence. And if the evidence reasonably supported either theory he might adopt that theory, and the Superior Court on appeal could not disturb his decision upon that ground. The Superior Court does not weigh evidence in this class of cases; it may determine whether the finding of the commissioner should be corrected or not, or whether there was any evidence to support the conclusions reached. And when it has done this its control over the evidence ceases."

We are asked to reverse the decision of the Commission because, as defendant's counsel says, "there is not even a "scintilla of evidence to support its finding." We think there was sufficient evidence, though slight from the very nature of the case, to support the finding, and that the inference of death from accidental cause was reasonable and justifiable.

The petitioner claimed that Patrick's death was due to injury resulting from accident occurring while decedent was engaged in lifting bags of grain. Appellant contended that there was no accident, but that decedent died from natural causes.

In reaching his conclusion the chairman had to determine:—

1. Do the facts and circumstances of the case warrant a finding that an accident occurred injuring the decedent, within the meaning of the Act, and if so,—

2. Did the decedent die from the results of such injury by accident?

The answer to the first question, under the testimony solves the second, and sets at rest the contentions of counsel upon the main issue in the case.

What is an accident, and what is the meaning of the word, the generally accepted meaning, and the generally adopted application in Acts similar to that under consideration here? As defined by lexicographers, an accident is a befalling; an event that takes place without one's forethought or expectation; an undesigned, sudden, and unexpected event. Its synonyms include mishap, mischance, misfortune; disaster, calamity, catastrophe. Webster's New International Dictionary.

1. In general, anything that happens or begins to be without design, or as an unforeseen effect; that which falls out by chance; a fortuitous event or circumstance.

2. Specifically, an undesirable or unfortunate happening; an undesigned harm or injury; a casualty or mishap.

3. The operation of chance; an undesigned contingency; a happening without intentional causation; chance; fortune. Century Dictionary.

1. Anything that happens; an occurrence; event. Especially:

(1) Anything occurring unexpectedly, or without known or assignable cause; a contingency.

(2) Any unpleasant or unfortunate occurrence, that causes injury, loss, suffering or death.

(3) *Med.* An unfavorable or unanticipated symptom. New Standard Dictionary.

Bouvier, Rawles Revision, defines it, "An event which under the circumstances, is unusual and unexpected by the person to whom it happens."

These sources of information, defining the word, are in complete harmony with the popular and generally accepted use of the word, and especially as construed by courts in states having Workmen's Compensation Laws with provisions similar to the provisions of the Maine Act. Some of the authorities are: *Bystrom Bros.* v. *Jacobson*, 162 Wis., 180; 155 N. W., 919; *Zappala* v. *Ind. Ins. Commission* (Wash.) 144 Pac., 54; *E. Baggot Co.* v. *Ind. Commission*, (Ill.) 125 N. E. 254; *Clark* v. *Lehigh Valley Coal Co.*, (Pa.), 107 Atl., 858; *Miller* v. *Bell* (Ind. App.), 127 N. E., 567; *Bd. of Comrs.* v. *Shertzer*, (Ind. App.), 127 N. E., 843; *State Road Comm.* v. *Ind. Commission* (Utah), 190 Pac., 544; *Steel Sales Corp.* v. *Ind. Commission* (Ill.), 127 N. E., 698; *Grannison's Admr.* v. *B. & R. Const. Co.*, (Ky.), 219 S. W., 806; *Manning* v. *Pomerene* (Neb.), 162 N. W., 492; *State Ex.rel Rau* v. *District Court* (Minn.), 164 N. W., 916; *City of Joliet* v. *Ind. Commission*, (Ill.), 126 N. E., 618. *Peoria Co. Ind. Board*, 279 Ill., 352, 116 N. E., 651. *M. & H. Zinc Co.* v. *Ind. Board*, 120 N. E., 249.

In Peoria Co. Ind. Board, supra, may be found many cases cited both in this country and in England sustaining the petitioner's contention here, and the case holds that "Even where a workman dies from a pre-existing disease, if the disease is aggravated

or accelerated under certain circumstances which can be said to be accidental, his death results from injury by accident. Acceleration or aggravation of a pre-existing disease is an injury caused by accident. 1 Bradbury on Workmen's Comp., 385; Elliot's Workmen's Comp. Act (7th Ed.) 9, and cited cases. Another case directly to the point is also cited therein: "A workman, whilst tightening a nut with a spanner, fell back on his head and died. A post-mortem examination showed that there was a large aneurism in the aorta, and that death was caused by a rupture of the aorta. The aneurism was in such an advanced condition that it might have burst while the man was asleep, and a very slight exertion or strain would have been sufficient to bring about a rupture. The trial judge found that the death was caused by a strain arising out of the ordinary work of the deceased operating upon a condition of body which was such as to render the strain fatal, and held that it was an accident within the meaning of the law. This decision was upheld both by the court of appeal and the House of Lords. *Hughes* v. *Clover & Clayton & Co.*, (1909), 2 K. B., 798."

That Patrick was suffering from diseased arteries pre-disposing him to cerebral hemorrhage is of no consequence in the case. That he might have died, or would have died in his bed, of cerebral hemorrhage, in a year or a week is immaterial.

The question before the Commission was whether the work that he was doing on the afternoon of October 13th, 1919, caused the cerebral hemorrhage to then occur. If so, we think it was an accident arising out of and in the course of his employment.

This was a question of fact. The Industrial Accident Commission through its chairman has decided this question of fact in favor of the claimant. The finding is, we believe, supported by rational and natural inferences from proved facts.

Accidental injury causing death is at least as believable and reasonable, as the theory that a man continued to talk rationally and perform manual labor for a time, however short, after an attack of cerebral hemorrhage which causes death in a few hours. Of the two theories, the former was adopted by the Commission as the more reasonable, and we do not feel justified in disturbing its finding.

*Appeal dismissed.*
*Decree affirmed.*

PHILBROOK, J.  Dissenting.

I am unable to concur in the foregoing opinion, and because I feel that this case is one of more than ordinary importance, and that the effect of the opinion will be so far reaching, I am constrained to express the reasons which control my dissent.

The statute under consideration awards compensation for personal injuries, but only when those injuries arise (a) in the course of the employment, (b) out of the employment, and (c) by accident.

By practically unanimous decisions of the courts of England and of this country it is held that an injury to an employee arises in the course of his employment, at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment, or engaged in doing something incidental to it.  In the case at bar it is conceded that the pathological conditions which resulted in the death of Patrick became manifest in the course of his employ-ment so that discussion of this point becomes unnecessary.

Judicial authorities and text-writers have not found it so easy to give a comprehensive definition of the expression "Arising out of the employment," which shall precisely include all cases within and exclude all those without this statute.  But there seems to be a practical unanimity in declaring that an injury may be said to arise out of the employment when there is a "causal connection between the conditions under which the employee worked, and the injury he received," Westman's Case, 118 Maine at Page 143.  In discussing the application of this rule of law to the facts arising in the case at bar, it is difficult to avoid reference to matters which may be also properly treated under the "accident" clause of the statute, and in advance I crave indulgence if I repeat somewhat when that branch of the case is reached.  At the outset of our present consideration we must discriminate between the so-called cause of death, as given in a medical death certificate, and the conditions which gave rise to that cause.  That Patrick's death was due to cerebral hemorrhage, and that the hemorrhage was due to a bursting blood vessel no one will deny.  It may also be frankly admitted that blood vessels in the human system more often burst because of increased blood pressure.  But according to the testimony of

the physicians in the case, as well as from common experience, we learn that in many cases blood vessels, weakened from disease, burst when no unusual exercise precedes the event, occurring sometimes, as these physicians say, when the victim is in repose, sleeping in his bed. In such cases, and they are not infrequent say the doctors, the time appointed once for man to die has come on silent footsteps, the finger of death touches its victim and he sleeps forever. This being true, the petitioner must prove something more than cerebral hemorrhage, something more than a bursting blood vessel, something more, even, than increased blood pressure. She must prove that there existed a causal relation between these things and the "conditions under which the employee worked." In short, she must prove that the personal injuries, which resulted in death, arose out of the employment in which the deceased was engaged. This requires a careful, critical, impartial examination of the evidence. I yield to none in my sympathy for those who are in need, but the admonition which we impress upon jurors lest they be unduly influenced by this commendable trait of the human mind, must as well restrain us in our judicial findings.

The evidence relied upon by the chairman of the Commission, and by those who join in the opinion to which I am now dissenting, may be divided into two groups: First, the testimony of Bailey, the only person present when Patrick was stricken; second, that of the physicians. Here it is proper to remark that I do not disregard that portion of the statute regarding finality of findings of fact made by the chairman of the Commission, my dissent being based upon what I regard as lack of evidence to support that finding, thus raising a question of law.

The finding of the chairman is embodied, verbatim, in the opinion, and as it is before us in the opinion, there is no necessity of repeating it. As to the testimony of Bailey, the crucial part is brief and I desire to point out what seems to me to be a contradiction, upon the vital point, between the testimony as given by the witness and the testimony as stated in the finding and opinion. The latter says, "Mr. Patrick stooped to pick up his end of the bag and as he threw it onto the pile Mr. Bailey said he noticed Mr. Patrick lurched a little. However, they put the bag in place and both stooped and picked up the second bag and placed it on the pile. Again Mr. Bailey says he noticed that Mr. Patrick lurched a little as he

swung the bag up." Apparently, from this statement of what the evidence was, the chairman drew the conclusion that the exertion of stooping and lifting caused the additional blood pressure and the train of fatal incidents followed. If such had been the testimony, I might be able to concede that the petitioner had produced some evidence to prove this branch of the case. But if I am capable of understanding Mr. Bailey's testimony, as it appears in the record, it does not measure up to the interpretation put upon it by the chairman but falls considerably short of it. Mr. Bailey distinctly says that he "trucked the first two bags of grain in after dinner" and that although this was the first work done, no previous lifting or straining being testified to, it was "When he (Patrick) went to unload those two bags, he lurched." This plainly shows that before he stooped, before he lifted, and before he had done anything pertaining to the work in which he was employed, the pathological conditions which resulted in his death had arisen. How can this testimony be said to show that there was causal relation "between the condition under which the employee worked and the injury he received?" It seems to me to negative rather than to sustain the claim of the petitioner that there was any such causal relation.

Turning to the testimony of the physicians, it will be observed that counsel for the petitioner, learned in law and familiar with the requirements of the statute, adroitly frames a hypothetical question which includes the condition of stooping and lifting before the lurching and asks if "in view of those facts, the work in the forenoon and in the afternoon, lifting the bags that he was lifting, would increase the blood pressure." To this inquiry Dr. O'Connell answers in the affirmative. Again he was asked, "And did the cerebral hemorrhage follow, directly, in your judgment, as a result of the lifting which produced the increased blood pressure." To this inquiry also an affirmative answer was returned. But, as we have already seen, the testimony of Mr. Bailey would not warrant the hypothetical question to be framed as it was. A similar hypothetical line of questions addressed to Dr. Scannell elicited similar affirmative answers. But we must not overlook other significant and important testimony of Dr. Scannell wherein he tells us that when he was seeking for the history of the case he learned that Patrick had hardening of the arteries, that he had been feeling poorly for a month

or six weeks, in the morning was sick to the stomach, and complained of headaches and dizziness. He also testified that "some of the common causes leading up to apoplexy are diseased conditions which have a tendency to cause hardening of the arteries, such as heart and kidney complications, worry, anxiety, overwork, and all those things that have a tendency to put wear and tear upon a man's vessels." May we not truthfully say that in the case at bar there is quite as great a possibility that Patrick's attack of apoplexy was the result of his diseased condition, which undoubtedly existed before the shock, rather than the lifting of the bags that afternoon which, according to Mr. Bailey's testimony, was not done before the shock? The burden is upon the petitioner to satisfy a tribunal that her claim is well founded. "The claimant must go further than simply to show a state of facts which is as equally consistent with no right to compensation as it is with such right. Surmise, conjecture, guess or speculation are not sufficient to sustain the burden and justify a finding in behalf of the claimant." Westman's Case, supra, at Page 138 and cases there cited.

The time once appointed for Patrick to die had arrived. Has the petitioner shown that there was a causal relation between that death and the conditions under which he worked. From the testimony in the case, and that is all we have a right to depend upon, I am unable to answer this question in favor of the petitioner.

Passing now to the third essential for recovery under the statute, the question arises whether the petitioner has shown that Patrick died from personal injuries arising from accident. From a fairly extensive examination of the authorities it appears that there is not complete harmony of views among the courts as to what constitutes an accident, or an accidental injury, arising out of and in the course of employment, which would authorize the injured party, or his dependent in case of death, to receive compensation. One writer upon the subject of Workmen's Compensation Acts declares that the term "accident" has probably been more discussed in adjudication than any other word in the whole English language. This may, in part, account for the varying views. On the one hand we should not be over technical and on the other we should not be too indulgent, when we attempt to construe the word and apply that construction to the case at bar. Damburn on Employer's

Liability, 4th edition, Page 100, says: "Roughly speaking, accidents are divided into two great classes; (a) accidents peculiarly known as such, such as railway accidents, breaking down of machinery, explosions, collisions, etc., where persons injured by them are spoken of as injured by accident; and (b) accidents where there is no such external mishap, but where a man injures himself, as we would say, by accident where he either strains a muscle, or ricks his back, or ruptures himself, or otherwise hurts himself in unexpected manner." *Boyed on Compensation Laws*, Sec. 458, says, "Strains sustained by employees of normal health in the course of their employment are generally regarded as accidental injuries.Ruptures, resulting from lifting heavy objects, are generally held fortuitous and unexpected events, in other words, accidents." These words are oft quoted from *Fenton* v. *Thorley*, 89 L. T., 314, "If a man in lifting a weight, or trying to move something not easily moved, were to strain a muscle, or rick his back, or rupture himself, the mishap, in ordinary parlance, would be described as accidental."

In an extended compilation of cases by Kiser, under the title Workmen's Compensation Acts, accompanying the Cyc-Corpus Juris system, fortified by many citations, it is said that "the term 'accident,' as employed in the compensation acts, is broad enough to include an injury from muscular strain or physical over exertion, such as hernia, or rupture, or bursting of blood vessels. This is true, although the physical condition of the employee is such as to pre-dispose him to the injury. But it has been held there must be a definite particular occurrence to which the injury can be attributed." Obviously, in the case at bar, the petitioner depends on proving an accident in that class of cases latterly spoken of, and which does not call for any external violence, but which has been alluded to as having been occasioned by some act of the deceased whereby a strain produced the injury. But even in this class of cases we must not overlook the conceded rule that there must still be an accident. Hence definitions of lexicographers and courts are of importance in determining what an accident consists of and what are the fundamental principles to which we must look in deciding this or any other case. Our own court, speaking through the late Chief Justice Peters, in *McGlinchey* v. *Fidelity and Casualty Company*, 80 Maine, at Page 253, says, "The definition of accident, generally assented to, is an event without any human agency,

or if happening through human agency, an event which, under the circumstances, is unusual and not expected to the person to whom it happens." If it should be urged that this definition was given in an accident insurance case then we are only obliged to turn to the very first case relied upon in the opinion from which I am now dissenting, namely, *Bystrom Bros.* v. *Jacobson, et al,* 162 Wis., 180; 155 N. W., 919, where the court holds that "the term accidental, as used in compensation laws, denotes something unusual, unexpected and undesigned." Here then is the angle of difference between myself and those who hold to the opinion, namely, on the day when Patrick suffered the shock did there occur anything as the cause of that shock that was unusual, unexpected and undesigned. Of course the shock and the subsequent death were unusual, unexpected and undesigned, but that is not the point involved, but rather were the shock and subsequent death caused by anything, arising from the conditions under which Patrick worked, which was unusual, unexpected or undesigned. Cause must not be confounded with effect, and this the majority opinion seem to do. The causal relations of conditions to the shock once more come to the surface. Again we note the difference between the evidence of Mr. Bailey and the statement of facts made by the chairman of the Commission as to whether the shock preceded or followed the lifting of the bags of grain. But at this stage of the discussion, the relative order of lifting and shock become less important because, whichever preceded the other, the vital question is whether anything unusual, unexpected or undesigned occurred as the cause of the shock. Plainly there can be but one answer and that is in the negative. It is undisputed that Patrick was only called upon to lift, with the aid of another man, the comparatively light load consisting of a bag of grain weighing one hundred pounds and place it on a pile. He was doing the same work, in the same way, with the same surrounding conditions, with the same load, as he had been doing for weeks, months and perhaps years. How can it possibly be said that an accident occurred under the cases cited by the opinion where it is held that an accident involves the happening of something unusual, unexpected or undersigned as a cause of the personal injury.

Lest this dissent may be unduly prolonged, I wish to cite only two cases from many which illustrate my position and then close.

The first is a Michigan case, *Stombaugh* v. *Peerless Wire Fence Co.,* 164 N. W., 537, where a dependent widow sought compensation for the death of her husband who, having had heart trouble of long standing, died as a result of heavy physical labor, the claim being made under the Workmen's Compensation Act of that state, Pub. Acts, No. 10 of the extra session of 1912, on the theory that death was accidental. The compensation was denied. The court held that the deceased was doing the work he agreed to do, in the way he intended to do it; that there was no evidence of mischance or miscalculation in what was being done, none of anything fortuitous or unexpected in the manner of doing it. The work in which the deceased was employed was lifting and lowering rolls of wire weighing from 150 to 160 pounds, from their place in a car and then rolling them to the car door. A case strikingly like the one at bar.

The second case is from the Illinois court, *Jakub* v. *Industrial Commission,* 123 N. E., 263, where an employee engaged in baling copper was found dead near the baling-press, with a completed bale of copper beside him and there was no evidence proving accident, or accidental injury, the claim being made that the heavy work which deceased was doing hastened his death by heart and kidney disease. The court said that this being the only claim made, namely, that heavy work, done in the ordinary course of his employment, caused or hastened his death, there could be no compensation, because it was not shown that anything unexpected or unforeseen occurred.

I said at the outset that this case appeared to me to be of more than ordinary importance and the decision to be far reaching. I still think so. I cannot bring myself to believe that where a man is doing his ordinary work, under ordinary circumstances, in the ordinary way, and is suddenly stricken with a fatal malady, nothing unusual, unexpected or unforeseen occurring as a cause of the malady, it was intended by the Legislature to be regarded as a case of accidental death. If such was and is the intention of the law making power, let it be declared in no uncertain way.

The duty of the court is to interpret and expound the law as it exists. Under this statute the employee has rights but the employer also has his. The scale beam should rest exactly horizontal. The balance weights should be of no baser metal than the pure gold of absolute justice.