DANIEL P. RUNDLE

*v.*

ROSA E. BOHRER.

*Opinion filed October 23, 1906.*

CONTRACTS—*when contract for sale of land will be reformed.*
A contract for the sale of a lot will be reformed in equity so as to
make the description begin upon the street line instead of in the
center of the street, the fee of which was in the vendor, where
the preponderance of the evidence shows that the lot was meas-
ured off by the parties from the street line and that a fence was
built around the lot, the location of which, and the vendee's posses-
sion with reference thereto, was not questioned until the vendee de-
manded her deed, nearly two years later.

APPEAL from the Circuit Court of Champaign county;
the Hon. SOLON PHILBRICK, Judge, presiding.

RAY & DOBBINS, and WALTER B. RILEY, for appellant.

MANFORD SAVAGE, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the
court:

The parties to this suit entered into a written contract
on June 27, 1903, by which appellant, Daniel P. Rundle,
agreed to convey to appellee, Rosa E. Bohrer, a lot on Pros-
pect avenue, in the city of Champaign, with a frontage of
one hundred and twenty feet and extending back one hun-
dred and thirty-two feet, and appellee agreed to pay $2500
therefor in monthly payments, with interest, the last install-
ment to be paid on or before July 1, 1908. Payments were
made up to the one which was due on December 1, 1904,
and appellee offered to pay the full amount due at that date.
Appellant was willing to accept the amount and make a con-
veyance of the lot as it was described in the written contract,

extending to the center of Prospect avenue, but the appellee claimed that there was a mistake in the writing and that the front line of the lot which she purchased was the west line of the avenue and that it extended back one hundred and thirty-two feet from that line. Appellant insisted that two rods of the lot was in Prospect avenue, and refused to make a conveyance except in accordance with the written contract. Appellee filed the bill in this case, alleging that there was a mutual mistake of the parties in the description of the property, and asking the court to correct the mistake and to enforce the specific performance of the contract. Appellant brought a suit in ejectment against appellee for the possession of the premises, in pursuance of a notice given by him on December 9, 1904, requiring her to vacate the premises. Appellee amended her bill, setting up the commencement of the ejectment suit and praying for an injunction against its prosecution. A temporary injunction was granted, and appellant having answered the amended bill, the issues were referred to a special master in chancery to take the evidence and report his conclusions of law and fact. The master took the evidence and reported that there was no mutual mistake in the description of the lot and recommended that the injunction should be dissolved and the bill dismissed. The cause was heard on exceptions to the master's report, and the court sustained the exceptions and entered a decree reforming the contract according to the allegations of the bill, making the injunction perpetual so far as to restrain appellant from prosecuting the suit in ejectment or any other suit to recover possession of the premises by virtue of any description different from the contract as reformed and corrected, and dissolving the injunction in other respects. From that decree an appeal was taken to this court.

The defendant owned a tract of land of two acres on Prospect avenue, in the city of Champaign, on which there were two houses. The tract had not been platted into lots or blocks and the fee to the center of the street was in the

defendant, subject to the public easement. One of the houses was rented to L. D. Bohrer, husband of the complainant, and he occupied it with his family. He negotiated, as agent of his wife, with defendant for the purchase of a lot eighty feet wide and extending back one hundred and forty feet, on which the house stood, and they agreed upon the terms of the purchase. They went to the office of Ray & Dobbins, attorneys, and had a contract drawn for the purchase by complainant of that lot. The defendant had his deeds with him, which described his tract of land as commencing at a quarter section corner which was in the center of Prospect avenue and the east line of the tract was in the center of that avenue. The description of the lot to be conveyed to the complainant was taken from the deeds, and the point of beginning was written as sixteen rods north of the quarter section corner, and the lot as described extended to the center of the avenue. An atlas was brought in and the lot was marked on it to the center of the avenue. The parties afterward agreed to a change in the dimensions of the lot, and it was to be one hundred and twenty feet wide and one hundred and thirty-two feet deep. Defendant procured a blank form and under his supervision complainant copied the old contract, changing the figures in the description to correspond with the new agreement. It was agreed that the parties should build a fence on two sides of the lot at their joint expense, and a fence was built accordingly, running east and west and then north the width of complainant's lot, for the purpose of fencing in the property which defendant had sold to complainant. This fence was built very near where the line would be according to the complainant's version of their agreement and thirty feet or more from the line as described in the written contract and claimed by the defendant. The complainant, her husband, her daughter and son all testified that defendant and Mr. Bohrer measured off the lot sold to complainant before the contract was signed, and that they began the measurement from the line of Prospect avenue, eight inches

inside of the sidewalk. Two witnesses, apparently disinterested, testified that they saw the parties measuring the lot, but they did not know from what point the measurements were taken. As against this testimony the defendant denied that he made any measurements or assisted in making any. Under the evidence it must be regarded as settled that the lot which defendant agreed to sell was measured from the west line of the avenue and that no part of it was in the avenue. It is true, the defendant owned the fee to the center of Prospect avenue; but it is not usual in purchasing city property, although the fee of a street is not in the municipality, to include in the size of the lot the portion in the street, the fee to which is practically worthless.

It is contended, however, that when the first contract was written complainant's husband understood that the lot extended to the middle of the avenue. Defendant testified that it was then stated that the description began in the middle of the street. Complainant was not present, but her husband, who was present, denied that anything of that kind was said or that he saw the sketch in the atlas. The solicitors for the complainant both testified in behalf of their client on that question. One of them could not say that Mr. Bohrer saw the sketch extending to the middle of the street, but it was his impression that all the parties were looking at it. The other solicitor, who examined the witnesses before the master, testified positively that Bohrer saw the sketch. As the agreement was for the purchase of a lot adjoining the avenue which had been measured and located by the parties, it would require the most positive and convincing proof to establish the fact that Mr. Bohrer understood that the contract was being made for a lot two rods of which was in the street and which consequently had two rods less of depth from the street. We are satisfied with the conclusion of the circuit court that he did not understand, from anything that took place in the attorney's office, that the contract was being written for a different lot from the one purchased.

It is insisted that even if the description in the contract did not correspond with the actual agreement, there was no mutual mistake, for the reason that defendant testified he was not mistaken.    There are two conclusions that might be drawn from the evidence: either that there was a mutual mistake in drawing the contract, or that the defendant then intended to defraud the complainant by having the contract drawn as it was.    It would be less creditable to him to assume that he intended a fraud than to adopt the theory that he intended to have the contract drawn according to the ·agreement and to convey the property which he had agreed to convey but afterward concluded that he would take advantage of the manner in which the contract was drawn.    At any rate, his subsequent conduct would lead us to adopt the first conclusion.    He put the fence practically on the line of the lot that he agreed to sell, and it remained there for about a year and a half without any question on his part.    He claimed on the hearing that the fence was put there by a mistake in line with the fence of a neighbor, and that it was from one and one-half to two feet from the line insisted upon by complainant.    It is most improbable that a mistake of thirty feet or more was made in putting up the fence, and that he intended to put the fence one hundred feet from the avenue instead of one hundred and thirty or more, as it was actually built.    Such a mistake could hardly have occurred and remained unnoticed for such a length of time.

The court did not enter any decree for the specific performance of the contract, but merely reformed it by correcting the mistake, and enjoined defendant from maintaining his ejectment suit or any other suit except in pursuance of the contract as reformed and corrected, and we think the court did not err in so doing.

The decree is affirmed.                     *Decree affirmed.*