TOWN OF ENFIELD *vs.* CLARK L. HAMILTON ET AL.

First Judicial District, Hartford, October Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued October 2d, 1929—decided January 6th, 1930.

*Ralph O. Wells,* for the appellant (defendant The Fidelity and Casualty Company).

*Philip J. Sullivan, Jr.,* with whom was *Leo J. Dow-ling,* for the appellee (plaintiff).

HAINES, J.   The complaint in this action consists of fifteen counts, the first twelve of which relate to certain claimed defaults of the defendant Hamilton as the tax collector of the plaintiff town for the years 1914-1927, and the last two are general in character. The thirteenth count charges that the surety bond which had been furnished by the defendant Casualty Company to the plaintiff town for the fidelity of the collector, contained a misdescription of the office to which the collector had been elected in that it referred to him as "collector of real property taxes" instead of "collector of taxes" as it should have done to conform to law and the agreement of the parties; that the bond was accepted by the town in the belief that it was in accordance with law; that the misdescription was due to a mutual mistake or if not a mistake on the part of the Casualty Company, was fraudulently inserted by it with intent to lessen its liability as surety for the collector.   It was alleged that unless the policy be re-formed and the misdescription corrected by the court, the plaintiff would suffer great pecuniary loss and damage.   The plaintiff claimed a court order, judg-ment or decree for the reformation of the original contract of suretyship to include the collection of per-sonal property taxes and of any and all other items lawfully assessed.   The answer to these charges was in substance a general denial, and by direction of the court the issues so raised were first tried and deter-mined.   Judgment was for the plaintiff and the de-fendant Casualty Company appealed.   In this court the plaintiff filed and argued a plea in abatement and a motion to erase, both upon the ground that the judg-ment in question was not a final judgment from which

an appeal will lie. The plea in abatement is dismissed, since the exclusive remedy of the plaintiff on the ground alleged is by motion to erase. *Wardell v. Killingly,* 96 Conn. 718, 721, 115 Atl. 539.

Believing its rights against the Casualty Company might be injuriously affected by the claimed misdescription in the policy, the plaintiff town sought equitable relief in this thirteenth count by way of reformation of the policy. This is essentially independent of the main action, which was one at law for the collection of damages. Though judgment upon this issue does not of course finally dispose of the main case, it is clearly separable and distinct from any judgment which would be rendered therein. As between the plaintiff and the Casualty Company it finally and irrevocably fixes the status and determines the rights of each with respect to the main suit. It is a "judgment in its nature final and separable from any other judgment that may be rendered in the action, although not finally disposing of the action," and therefore a final judgment from which appeal lies to this court. The motion to erase is denied. *Bunnell* v. *Berlin Iron Bridge Co.,* 66 Conn. 24, 37, 33 Atl. 533; *Guarantee Trust & Safe Deposit Co.* v. *Philadelphia, R. & N. E. R. Co.,* 69 Conn. 709, 714, 38 Atl. 792; *Finch* v. *Ives,* 24 Conn. 387; *Norton* v. *Shore Line Electric Ry. Co.,* 84 Conn. 24, 31, 78 Atl. 587; *Wardell* v. *Killingly,* 96 Conn. 718, 722, 723, 115 Atl. 539; *Banca Commerciale Italiana Trust Co.* v. *Westchester Artistic Works, Inc.,* 108 Conn. 304, 142 Atl. 838.

The facts of record show that on October 5th, 1914, the defendant Hamilton was elected to the office of collector of taxes of the plaintiff town, and re-elected for each of the succeeding twelve years. He was also appointed collector of personal taxes for the period February 1st, 1915, to January 31st, 1916, both inclu-

sive. In the town of Enfield, property taxes are payable March 1st each year. It is claimed that during his incumbency, Hamilton embezzled considerable sums of money which came into his hands as taxes, and failed to collect other taxes. C. D. Burbank, living in Enfield, was agent for the defendant Casualty Company, and A. S. Hopkins of Hartford was the resident manager of the company. The sole authority possessed by Burbank was to solicit applications for bonds and submit them to the Casualty Company, either directly or through the resident manager, Hopkins. He had no authority to bind the Casualty Company by any form of contract, nor had Hopkins, whose sole duty was to supervise the procurement and production of business for the company. Hamilton had formerly been bonded by the American Surety Company, but Hopkins offered Burbank a larger commission than was paid by the latter company and this induced Burbank to seek the opportunity for the Casualty Company to write the "requisite" bonds for Hamilton as tax collector. Before writing the bonds the Casualty Company sought from the town treasurer a statement as to the current liability and the condition of the accounts of Hamilton and received the following letter in response:

"Thompsonville, Conn., March 16, 1915.

"The tax account of Clark L. Hamilton, Collector of the Town of Enfield, Connecticut on List of 1913, due March 1, 1914, to February 27, 1915, were examined by the Treasurer monthly as required by law.

"On February 27, 1915, at the time liens were filed on real estate the account was last examined and found correct with the books of the Collector.

"As the selectmen left open, due to hard times, unadjusted accounts on personal property in the hope to obtain settlement without recourse of attachment,

the final audit by the town auditors has not been made.

"J. Hamilton Potter,
"Treasurer of Enfield, Conn."

The Casualty Company wrote two bonds, one covering the liability of the defendant Hamilton in the "office of collector of real property taxes" for $10,000, and the other covering his liability in the "office of collector of personal property taxes" for $1,000, both dated March 26th, 1915, from that date "during said term" of his office. These two bonds were delivered simultaneously to the town of Enfield and were deposited in the selectmen's box in the town clerk's office. These bonds were retained until the discovery of the default of Hamilton in or about 1927. The selectmen drew their order on the town treasurer and he delivered his check payable to Burbank as agent of the Casualty Company, for the premiums on the bonds. Burbank knew that Hamilton had been elected collector of taxes, and also that he had been appointed the collector of personal taxes, but it does not appear whether he gave that information to Hopkins or to the Casualty Company. However, this knowledge acquired by the agent, Burbank, while he was acting within the scope of his authority and in the course of the very transaction which this knowledge affected, is, in law, the knowledge of the principal, the Casualty Company. *Trumbull* v. *Hewitt,* 65 Conn. 60, 74, 31 Atl. 492. "The defendant cannot hide behind its agent's negligence in failing, if he did fail, to communicate that fact." *Back* v. *Peoples National Fire Ins. Co.,* 97 Conn. 336, 340, 116 Atl. 603. Subsequent to 1915 the $10,000 bond was annually renewed or continued in force by the payment by the town of the annual premium for which the Casualty Company issued renewal or continuation certificates. The $1,000

bond was not renewed. Before procuring the bonds Burbank did not see any selectman or other official of the plaintiff town other than the defendant Hamilton. The bonds were printed forms requiring only the insertion of name, amount, title of office and date, and were prepared by an assistant of one Anderson who was assistant superintendent of the bond department of the Casualty Company. Anderson did not examine the laws of Connecticut to ascertain what offices were held by tax collectors, but with the above quoted letter before him, caused two bonds to be prepared in the forms above stated; the first for $10,000 and the second for $1,000. The plaintiff contends that the first named bond was intended to cover liability for the office of tax collector as defined by statute, which includes both the tax on real property and the tax on personal property, and that the smaller bond was to cover the collection of personal or poll taxes, a distinct office, both offices being held by Hamilton. The Casualty Company claims that the intention was to cover only the collection of the real property taxes to the extent of $10,000 and the collection of the personal property taxes only to the extent of $1,000. The expression used in the $10,000 bond is "office of collector of real property taxes," and in the $1,000 bond the expression is "office of collector of personal property taxes," the condition of the first bond being that "the principal [Hamilton] shall faithfully perform such duties as may be imposed on him by law and shall honestly account for all money that may come into his hands in his official capacity during the said term." By statute there are but two offices, one being that of collector of taxes and the other the collector of personal or poll taxes. There is substantially no dispute as to the facts already recited, but the trial court found also that Burbank had requested

the Casualty Company to write two public official bonds as surety for the defendant Hamilton as collector of taxes and as personal tax collector. This finding the Casualty Company seeks to strike out on the ground that there was no evidence to support it. All the evidence is before us and we have studied it with attention.

From this it appears not only that Hamilton held two offices, one that of tax collector covering all property taxes, real and personal, and the other of special collector covering poll taxes, but he was elected to the former and was appointed to the latter. By law he was required to give bonds to the town for the faithful performance of his duties in both these offices. The Casualty Company's agent, Burbank, was a resident of the same town as Hamilton and was fully informed of these facts. He had previously furnished the requisite bonds for the former terms of Hamilton and was familiar with the requirements of the law with regard thereto. There is nothing whatever in the evidence to justify the belief that in soliciting the business of writing the requisite bonds on the present occasion he acted otherwise than in good faith. He was visited by the resident manager of the Casualty Company, who came from Hartford to Enfield for that purpose, and asked to solicit the business of furnishing bonds for Hamilton, the resident manager knowing that these bonds had been written previously by another company in the same line of business. Here, too, we must assume that the resident manager was seeking, as was the agent Burbank, to write a bond or bonds to protect the town in the performance of all the duties of Hamilton in the offices which he held. From the evidence no other reasonable conclusion is possible. Nor is there any evidence that Hamilton or the town desired or sought anything

other than this, which was what the law required.
Two bonds were requisite since there were two offices,
separate and distinct in character and importance.
It cannot reasonably be denied, then, that this was
what the town, through Hamilton, requested, and
what Burbank the agent and Hopkins the resident
manager of the Casualty Company understood and
undertook to furnish. Owing doubtless to the lapse
of fifteen years, the testimony of Burbank is some-
what vague as to just what was said, but it is clear
from what he does say, that he passed the application
to the resident manager and it was accepted, and as
Burbank believed, bound the company from that date.
It is clear from the testimony of the Casualty Com-
pany's vice-president, that this application was re-
ceived by the company and thereafter he sent a repre-
sentative of the company who examined the books
and records of the town and certified as to their status.
The only reasonable conclusion which can be reached
from all this is, that the application for full coverage
for Hamilton, which had been made and accepted,
was received by the Casualty Company and by it in-
vestigated and acted upon. The motion that para-
graph twelve of the finding be stricken out must be
denied. The trial court ordered the bond reformed
by striking out the word "real" so it would read "col-
lector of property taxes" instead of "collector of real
property taxes." Was the bond properly reformed?
The vital character of the finding which we have just
considered, justifies, we think, the detailed considera-
tion we have given it. Whether the trial court was
correct in ordering the reformation depends upon
whether there was a mutual mistake in writing and
accepting the bond, or fraud, actual or constructive,
or inequitable conduct, on the part of the Casualty
Company and ignorance or mistake on the part of

the town. *Reiner* v. *Maier,* 96 Conn. 566, 114 Atl. 657; *Back* v. *Peoples National Fire Ins. Co.,* 97 Conn. 336, 340, 116 Atl. 603; *Olmsted* v. *Olmsted,* 38 Conn. 309, 318, 319; *Crookston Improvement Co.* v. *Marshall,* 57 Minn. 333, 59 N. W. 297; *Welles* v. *Yates,* 44 N. Y. 525; *Home Ins. Co.* v. *Virginia-Carolina Chemical Co.,* 109 Fed. 681; *New York Life Ins. Co.* v. *McMaster,* 87 Fed. 63. To establish this there must be a preponderance of satisfactory and sufficient evidence, and this in turn depends upon the character of the testimony, the force of documents, circumstances and facts introduced and the general coherence of the entire case. *deKay* v. *Shorehaven Realty Co.,* 104 Conn. 36, 132 Atl. 533; *Baldwin* v. *National Hedge & Wire Fence Co.,* 73 Fed. 574; *Harrison* v. *Hartford, Fire Ins. Co.,* 30 Fed. 862; *German American Ins. Co.* v. *Davis,* 131 Mass. 316; *Shattuck* v. *Gay,* 45 Vt. 87; *Highlands* v. *Philadelphia & Reading R. Co.,* 209 Pa. St. 286, 58 Atl. 560; *Williamson* v. *Carpenter,* 205 Pa. St. 164, 54 Atl. 718; *Rundle* v. *Bohrer,* 222 Ill. 475, 78 N. E. 431.

We are fully satisfied of the soundness of the conclusion of the trial court, and that the Casualty Company, in writing this bond, either by mistake in its interpretation of the letter or the application or by conduct which was clearly inequitable, so worded it that it only partially covered the duties of the tax collector and left the town without protection to a very considerable degree. We do not deem it necessary to discuss in detail all the subordinate facts upon which this ultimate conclusion rests. We are confirmed in it by the facts, among others, that when the time arrived for the first renewal of the bond, the certificate of renewal by the company described the office of the principal of the bond as "Property Collector of Taxes." This means nothing more nor less than "Col-

lector of Property Taxes." Again, on the renewal for the third year, and still again for the fourth, the same statement appears. In the succeeding renewals the name of the office is not given but only Hamilton's name as "principal" in the bond. This is as much the language of the company as that in the bond itself. Under the words of the bond, the town would not have the protection for which it had applied, which it supposed it had received, and for which it paid; under the words of the renewal, it would. Our law does not recognize as a "requisite" bond, one which covers the duties of the collector in part only, leaving the remainder without coverage. The presumption is that the Casualty Company intended when the bond was written fifteen years before, to comply with the application and the requirements of our law in good faith. If, however, it intended to limit its liability and so furnish the town, and accept the premiums for, a bond which did not comply with the application and did not furnish the protection the town was asking for, it was inequitable conduct on the part of the officials of the Casualty Company. The acceptance of such a bond by the town was obviously in ignorance of the fact that the Casualty Company was thus escaping a responsibility for which the town was paying and supposed it had assumed, for lawful and correct conduct on the part of public officials is presumed in the absence of contrary evidence. Where the law required a "sufficient bond" to cover the faithful performance of the duties of a guardian, and it appeared that a joint bond was taken by the judge of probate which did not furnish full protection, it was held that the bond should be treated as joint and several in which form it would be sufficient. In that case it was held: "In order that the bond to be taken by the judge of probate should be the adequate

security required by law, and bind the estate of the surety, it was legally necessary that it should be joint and several. . . . The judge of probate must be presumed to have intended to do his duty in this case, and take such a bond. The obligors in this case . . . must be presumed to have been honest men, to have known what the law required of them and of the judge of probate, and of the high moral obligation which it imposed on all of them, and to have *intended to conform to its requirements." Olmsted* v. *Olmsted,* 38 Conn. 309, 320. It is to be noted that when the first renewal of the $10,000 bond was made, the $1,000 bond had expired and was not renewed. This left the town with no coverage for the collection of the personal property taxes, if the present contention of the Casualty Company is correct.

We have not overlooked other and sweeping changes in the finding which are sought by the defendant company. They are so numerous and comprehensive that a thorough reading and re-reading of the evidence has been necessary. For reasons, some of which will appear from what has already been said, we grant the request for striking out paragraph seventeen from the finding which is to the effect that all the renewal certificates contained the words "Property Collector of Taxes." This is an obvious error, since only the first three contained these words, and paragraph twenty-one of the draft-finding is substituted. Some of the other changes desired and which could be granted do not bear sufficiently upon the controlling issues of the case to justify their addition to the finding. Of the remainder some are not supported by uncontradicted or undisputed evidence and others would not affect the result if granted.

By way of résumé, we may say that while a fuller finding of the subordinate facts would have greatly

facilitated our review of this record, we are satisfied that the evidence fairly and reasonably supports the subordinate facts as found and corrected; and since the agents had knowledge of the requirements and this knowledge must be held to be the knowledge of the principal (*Back* v. *Peoples National Fire Ins. Co.*, 97 Conn. 336, 116 Atl. 603), we think there was a mutual mistake in assuming that the original bonds as written and accepted complied with the application and the law so that that was done which was not intended by either; it was not incumbent on the court to accept in full the attempted explanation of the vice-president. If it had accepted it, a conclusion of inequitable conduct would not have been unreasonable. This case is controlled by an equitable principle, fundamental in character, which was early adopted in this State, that "in legal transactions no one shall be allowed to enrich himself unjustly at the expense of another, through or by reason of an innocent mistake of law or fact entertained without negligence by the loser, or by both." *Park Bros. & Co., Ltd.* v. *Blodgett & Clapp Co.*, 64 Conn. 28, 34, 29 Atl. 133; *Northrop* v. *Graves*, 19 Conn. 548.

Though it does not appear that any official of the town read the bond until this dispute arose, "the mere omission to examine a policy of insurance to see if it accords with the oral agreement previously made between the parties, does not necessarily and as matter of law preclude the insured from obtaining a reformation of the policy; especially if the acts or declarations of the insurance company's agent induced such omission. *Fidelity & Casualty Co.* v. *Palmer*, 91 Conn. 410, 99 Atl. 1052; *McCusker* v. *Spier*, 72 Conn. 628, 633, 45 Atl. 1011.

One assignment of error was the exclusion of a question put to Anderson: "Now, when you signed these

bonds, one for the sum of $10,000, covering the application of Hamilton as collector of real property tax, and the other in the sum of $1,000 covering Hamilton as collector of personal property tax, whether or not you did what you intended to do?" Counsel's brief proceeds upon the assumption that this question sought to disclose what Anderson's intention was. A reading of it, however, shows that an answer would not have disclosed his intent. It could only have shown whether he thought that the bonds as written had accomplished some intention he had. What that intention was, would have remained unknown. It was not for Anderson but the court to say what the bond accomplished, and the question as framed was properly excluded.

There is no error.

In this opinion the other judges concurred.