DR. EDWIN G. READE *vs.* THE INDEMNITY INSURANCE
COMPANY OF NORTH AMERICA.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

310

Argued March 3d—decided April 14th, 1936.

*William P. Wertheimer,* for the appellant (defendant).

*Sidney S. Cassel,* for the appellee (plaintiff).

HINMAN, J.  The defendant, a Pennsylvania corporation, was insurer under an indemnity policy covering operation of an automobile which was involved in an accident.  As a result of the accident Warren Humiston brought a negligence action against Joseph and Hugh Humiston.  Agreement was reached whereby the claim was to be settled by payment of $1900 by the defendant, and on August 16th, 1935, it drew its draft for that amount payable to Warren Humiston, William P. Wertheimer, Attorney, and Clayton L. Klein, Attorney, the two latter being the counsel for Warren Humiston in the negligence action. The next morning, August 17th, the attorney for the insurance company delivered the draft, it was indorsed by Humiston and his two attorneys, then Wertheimer indorsed it individually and deposited it in a bank to his personal account.  On the same day

garnishee process in an action of Edwin G. Reade against Warren Humiston was served on the insurance commissioner, service was subsequently made on Humiston, and on March 16th, 1934, judgment was rendered that the plaintiff recover $333.07 damages and costs. Execution was issued, served in the manner hereinafter stated, returned unsatisfied, and the present action of scire facias was brought. On the trial the plaintiff was beset, to an extent and in a manner which we do not commend, by technical objections to the service of the garnishee process and the execution, but the trial court held the services valid and effective, as well as that the defendant was indebted to Warren Humiston at the time of the garnishment, and rendered judgment for the plaintiff.

The finding is that service of the garnishee process was by a constable of the town of Hartford leaving a copy of the writ "with Howard P. Dunham, State Insurance Commissioner, as the company's duly authorized agent" and that he paid a fee of $2 to the commissioner. The appellant asserts that there is no foundation for the finding that the insurance commissioner was duly authorized by the defendant, as provided in § 4123 of the General Statutes, so that process might be served upon him, in that no copy of a certificate of his appointment, certified by him, was presented in evidence. While the statute provides that such a copy shall be sufficient evidence of his authorization, we do not regard it as exclusive and agree with the trial court that the reception of service of the original process by the commissioner and his collection of the fee provided by § 4124 when service is made under authority conferred by these statutes, together with the presumption of lawful and correct performance of his duties (*Enfield* v. *Hamilton,* 110 Conn. 319, 329, 148 Atl. 553) are sufficient to afford

an inference of his authorization, in the absence of any evidential indication to the contrary. Also the fact that the defendant is doing business in this State presupposes compliance with the requirements of § 4123 which is a condition precedent thereto.

It was claimed, also, that there was no valid service of the execution upon the defendant. As to this it is found that the execution was first served by a deputy sheriff "on R. B. Schuenmann, superintendent of the defendant insurance company's claim office in Hartford." The appellant claims that this service was ineffective in that Schuenmann was not such an officer or agent of the defendant that service could be made upon him under § 5469 of the General Statutes. However, the return states, further, that, Scheunmann refusing to pay, the officer then made demand upon Bryan H. Atwater, chief clerk in the office of the insurance commissioner, and left in his hands a copy of the execution. If this constituted service upon the resident attorney of the defendant in accordance with §§ 5469, 3489, 4123, 4124, and 4125 of the General Statutes, it would be sufficient, although the prior demand on Scheunmann was abortive, but it is asserted that essentials of such compliance are lacking. Section 4125 provides that the insurance commissioner "may . . . designate some person in his office upon whom, in his absence, service of [all lawful] process may be made." The finding that Atwater was so designated is supported by the testimony of the officer who served the execution. However, we are unable to construe this statute otherwise than as making the absence of the commissioner, at the time, an essential prerequisite to service upon the person so designated; the finding, as to this, is that the return does not state, nor was there evidence introduced, that the commissioner was absent at the time when service

was so made on Atwater, and we can find no tenable support for an inference of such absence. Therefore we are constrained to hold that the present record fails to support, in this respect, the trial court's conclusion that the execution was properly served. Although, regrettably, a new trial must be ordered solely upon this ground, we dispose of the assignments which pertain to the merits of the case in the hope that further litigation as to them may be obviated.

The appellant asserts that at the time of service of the garnishee process there was no debt due to Warren Humiston, the judgment debtor, which was subject to foreign attachment. The draft was drawn by the defendant on itself, to be presented through a named Philadelphia bank, and shows on its face that it was given to settle the claim of Warren Humiston arising out of an accident or loss covered by the defendant's policy, and was made payable to him and the two attorneys who represented him in the negligence action in settlement of which the draft was given. In this and most other states, the rule is that, in the absence of special agreement to the contrary, the giving of a draft by a debtor to his creditor does not discharge the debt itself, until the draft is paid; it is a means adopted to enable the creditor to obtain payment of the debt and remains, until honored or paid, evidence of the indebtedness. *Alexiou* v. *Bridgeport-Peoples' Savings Bank,* 110 Conn. 397, 401, 148 Atl. 374, and cases cited page 402; *Bassett* v. *Merchants Trust Co.,* 118 Conn. 586, 593, 173 Atl. 777. "The creditor may return the bill . . . when dishonored by nonacceptance or nonpayment and proceed upon the original debt. The acceptance of the instrument by the creditor is considered as accompanied by the condition of its payment." 3 Daniel, Negotiable Instruments (7th Ed.) § 1448. We find nothing in the facts which estab-

lishes or indicates any special agreement to the contrary, as the defendant suggests. Even if the exchange of releases and draft were accorded the effect which the appellant claims of extinguishing the cause of action in negligence, there would be substituted the indebtedness for the amount of the agreed settlement which was the consideration of the releases,—a debt, evidenced by the draft, which might be proceeded upon if the draft was dishonored. We regard the giving of the releases as the result "of the assumption that the . . . draft will ultimately be paid, rather than evidence of its acceptance in absolute payment" and therefore as intended as no more than recognition of conditional payment. *Bassett* v. *Merchants Trust Co.*, supra, p. 595.

The appellant also seeks application of the principle that when negotiable paper has been transferred to a bona fide indorsee for value there is no garnishable debt to the original payee. *McCormick* v. *Warren*, 74 Conn. 234, 239, 50 Atl. 740. It claims, further, that under the law of Pennsylvania, where it was payable, a draft in the hands of an indorsee cannot be garnisheed. *Holliday* v. *Potter*, 80 Pa. Sup. 194, cited by the appellant, resembles this case in that it involved a draft drawn by an insurance company on itself payable to the insured Potter and wife, in settlement of a loss under a policy. The court said (p. 196) that although the instrument was in form an inland bill of exchange it was in fact an order by the drawer on itself. The draft was dated October 16th, 1916, and made payable November 25th. On October 26th it was indorsed and delivered by the Potters to a bank for full value. On November 9th, process was served on the drawer in an action by a judgment creditor of the Potters. It was held (p. 198) that the bank, having become a holder in due course for value before ma-

turity and before the attachment, the drawer was to be protected from double payment to the garnishor as well as to the bank, and it was said that the same would apply to a check if the indorser had bought it without knowledge of the attachment and in good faith.

However, the form of the draft in the present case and the course of conduct pertaining to it are so customary and familiar in the settlement of claims of this character and the purpose of including the attorneys as well as the claimant as payees,—to protect them in the collection of their fees out of the proceeds passing to the claimant,—so well recognized and understood, that to give them the effect of transferring sole and absolute ownership to the attorney in whose bank account the draft was deposited, and, as the appellant also claims, exposing it to double liability—to the latter as well as to Humiston, would be to attribute to the procedure a patently fictitious significance. There was no evidence that the transaction (contrary to the inference arising from it as disclosed) was such as to amount to a bona fide purchase for value, by the last indorser, of the draft and its entire proceeds. Adequate opportunity was open, under §§ 5815 and 5820 of the General Statutes, to the defendant and to any claimants to protect their respective rights and to introduce any proper testimony respecting the facts. Upon the finding, with such corrections as the appellant is entitled to, the principle invoked was not applicable, and even assuming that the attorneys, by reason of an attorney's lien, were entitled to preferential payment for their services out of the proceeds of the draft, the trial court was justified in finding that the defendant was indebted to Humiston, the judgment creditor, above any sum so payable to the at-

torneys, at least to the extent of the relatively small amount of Reade's judgment.

There is error and a new trial is ordered.

In this opinion the other judges concurred.